In re ALLEGHENY INTERNATIONAL, INC., Debtor-in-Possession.

The OFFICIAL COMMITTEE OF UNSE-CURED CREDITORS OF ALLEGHE-NY INTERNATIONAL, INC., in its own right and for the Use and Benefit of Allegheny International, Inc., Debtor-in-Possession, Plaintiff,

v.

MELLON BANK, N.A., et al., Defendants.

Bankruptcy No. 88–448.
Adv. No. 88–186.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 7, 1988.

Stephen I. Goldring, Asst. U.S. Trustee, W.D. Pennsylvania, Pittsburgh, Pa., for U.S. Trustee.

Robert G. Sable, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for The Official Committee of Unsecured Creditors for Allegheny Intern., Inc.

David A. Murdoch, Kirkpatrick & Lock-hart, Pittsburgh, Pa., for Mellon Bank Group.

Douglas A. Campbell, Campbell & Levine, Pittsburgh, Pa., for The Official Committee of Unsecured Creditors for Sunbeam.

M. Bruce McCullough, Buchanan Ingersoll Professional Corporation, Pittsburgh, Pa., for debtor.

Samuel H. Iapalucci, Vice President and Treasurer Allegheny International, Inc., Pittsburgh, Pa., for Allegheny Intern., Inc.

Richard S. Toder, Zalkin, Rodin & Goodman, New York City, for Chemical Bank.

Denis F. Cronin, Wachtell, Lipton, Rosen & Katz, New York City, for Marine Midland Bank, N.A.

Security Exchange Commission New York City, for Securities & Exchange Com'n.

Gary L. Blum, Reavis & McGrath, New York City, for Official Committee of Equity Security Holders.

Joel Walker, Pollard, Walker & Vollmer, Pittsburgh, Pa., for Prudential Capital Investments and Prudential Ins. Co. of America.

Richard A. Gitlin, Hebb & Gitlin, P.C., Hartford, Conn., for The Aetna Cas. and Sur. Co., The Equitable Life Assur. Soc. of the United States, Teachers Insurance and Annuity Ass'n, The Travelers Ins. Co., New York Life Ins. Co., Equitable Cas. Co., Connecticut Mutual Life Ins. Co. and Aetna Life Ins. Co. of Illinois.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Chief Judge.

Two matters are presently before the court. The Official Committee of Equity Security Holders of Allegheny International, Inc. (the "Equity Committee") moves to intervene in the instant adversary proceeding. Mellon Bank, on its own behalf and as agent for twenty-five other banks (the "Mellon group") moves to compel the joinder of Allegheny International, Inc. ("Allegheny International" or the "debtor") as a party to this adversary proceeding. The motion to intervene is denied in part and granted in part, as set forth below. The motion to compel joinder is granted, as set forth below.

On February 20, 1988 Allegheny International, and four subsidiaries, Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., and Chemetron Corporation, filed petitions for reorganization under Chapter 11 of the Bankruptcy Code. Fourteen other subsidiaries of Allegheny International filed for relief under chapter 11 on May 3, 1988. Shortly after the first five petitions were filed, the Official Committee of Unsecured Creditors of Allegheny International Inc. (the "Creditors' Committee") obtained leave of court to initiate the case at bar. The twenty-six banks comprising the Mellon group, who are the defendants in this adversary proceeding, are pre-petition lenders of the debtor. The complaint contains eleven counts. The first nine counts assert theories of fraudulent conveyance and preference. Count X asserts the theory of equitable subordination. Count XI asserts the theory of breach of the duties of good faith and fair dealing.

■ It is appropriate at this juncture to examine briefly the nature of this case and the involved parties. Section 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b) provides that the "trustee may avoid any transfer of an interest of the debtor in property" that is an improper preference. Section 548 of the Bankruptcy Code, 11 U.S.C. § 548 provides that the "trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition" if such transfer or obligation is a fraudulent conveyance, as that term is defined by that section. Section 1107 of the Bankruptcy Code, 11 U.S.C. § 1107 places the debtor in possession in the shoes of a trustee, inter alia, with respect to sections 547 and 548. Simply stated, a debtor in possession is empowered to avoid a preference or fraudulent conveyance. In the instant case, the debtor could have filed the complaint. However, for its own reasons, the debtor chose not to do so.

Absent bankruptcy, a shareholder would be the appropriate party to bring this cause of action, on behalf of Allegheny International, if Allegheny International chose not

to do so. This would be a classic stockholder's derivative action. Although a derivative action is usually directed at officers or directors, third parties, as in the instant case, may be defendants. H. Henn & J. Alexander, *The Law of Corporations and Other Business Enterprises*, § 367 (3d ed. 1983).

■ Notwithstanding the language of Sections 547, 548 and 1107, which enables a debtor-in-possession to avoid a preference or fraudulent conveyance, an official creditors' committee may bring the action when the debtor will not. *Committee of Unsecured Creditors v. Monsour Medical Center (In re Monsour Medical Center)*, 5 B.R. 715 (Bankr.W.D.Pa.1980); *Accord Equitable Gas Co. v. Equibank N.A. (In re McKeesport Steel Castings Co.)*, 799 F.2d 91 (3d Cir.1986). In such situations, the case is highly analogous to a shareholder's derivative suit. In a derivative suit, a shareholder brings a suit which could have been brought by the corporation. In an action such as the instant case, the creditors' committee, or an individual creditor, brings a suit which could have been brought by the corporation.

■ Because we view this case as a derivative action, we will grant the Mellon group's motion to compel joinder. In a derivative suit, the corporation is a necessary party, and is usually named as a nominal defendant, even though any recovery inures to the corporation. Therefore, we will allow the Mellon group to join the debtor as a nominal defendant, although we will excuse the debtor from actively participating in the prosecution of this adversary proceeding.

We now turn to the Equity Committee's motion to intervene.[1] The Equity Committee asserts that it may intervene pursuant to Fed.R.Civ.P. 24, Bankruptcy Rule 7024, and Section 1109(b) of the Bankruptcy Code, 11 U.S.C. § 1109(b). Fed.R.Civ.P. 24 provides, in pertinent part, that "[u]pon timely application, anyone shall be permitted to intervene in an action: (1) when a

statute of the United States confers an unconditional right to intervene ..." Bankruptcy Rule 7024 makes Fed.R.Civ.P. 24 applicable to adversary proceedings. Section 1109(b) of the Bankruptcy Code states that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, or any equity security holder, or any indenture trustee may raise and may appear and be heard in any issue in a case under this chapter." The Equity Committee contends that Section 1109(b), by itself, grants them an "unconditional right to intervene", and is also the operative statute with respect to Fed.R.Civ.P. 24(a)(1).

The United States Court of Appeals for the Third Circuit has addressed this issue. In *Official Unsecured Creditors' Committee v. Michaels (In re Marin Motor Oil, Inc.)*, 689 F.2d 445 (1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440, (1983), the court of appeals unequivocally held that an official committee in a bankruptcy case has the right to intervene in an adversary proceeding. The creditors' committee was permitted to intervene, pursuant to 11 U.S.C. § 1109(b), in an adversary proceeding which the chapter 11 trustee had brought. The parties opposing intervention asserted that the term "case", as it was used in 11 U.S.C. § 1109(b) did not include an adversary proceeding. The court of appeals rejected that argument, concluding that Section 1109(b) should be given a "broad and absolute reading...." *Id.* at 454. Under such a reading, the court of appeals found that 11 U.S.C. § 1109(b) provided an independent right to intervene in a bankruptcy adversary proceeding.

The court of appeals further held that Section 1109(b) was not satisfied by allowing the prospective intervenor to participate as an amicus curae: "The language of the statute seems clearly to require that more than mere participation as an *amicus* be allowed. Section 1109(b) says that a party in interest may raise ... any issue in a case under this chapter. But an *amicus*

---

**1.** Fed.R.Civ.P. 24(c) requires that the motion to intervene "be accompanied a pleading setting forth the claim or defense for which interven-

tion is sought." However, the Equity Committee merely seeks to adopt the existing complaint, obviating the need for a separate pleading.

participation is limited to the submission of brief on issues already raised and considered." *Id.* Were it not for the third circuit's disfavor of amicus status in situations such as the instant case, we would find amicus to be an attractive alternative.

Nor was the court concerned with the possibility of "the confusion, disorder, and expense that supposedly be entailed by allowing each creditor or stockholder to intervene in adversary proceedings...." *Id.* at 453. The court dismissed such concerns: "Surely relatively few individuals would have enough interest in the outcome of an adversary proceeding to seek to intervene." *Id.* We are mindful of the court's pronouncement in *In re Marin.* We are not overly concerned about the possibility of multifarious intervention, but we remain concerned over the possibility of delay and additional expense from even one strategic intervenor.

The Mellon group and the Creditors' Committee attempt to distinguish factually the instant case from *In re Marin,* but these are distinctions without a difference. The Mellon group and the Creditors' Committee also argue that *In re Marin* is no longer good law. They contend that Bankruptcy Rules 2018 and 7024, implemented after *In re Marin,* clearly indicate that Section 1109(b) does not apply to adversary proceedings. We find merit in this position.

Rule 2018(a) provides that "[i]n a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit an interested entity to intervene generally or with respect to a specified matter." The Advisory Committee Note recites that Rule 2018 "implements § 1109 and § 1164 of the Code." Rule 7024 merely recites that Fed.R.Civ.P. 24 applies in bankruptcy adversary proceedings. The Advisory Committee Note to Rule 7024 provides as follows:

A person may seek to intervene in the case under the Code or in an adversary proceeding relating to the case under the Code. Intervention in a case under the Code is governed by Rule 2018 and intervention in an adversary proceeding is governed by this rule. Intervention in a case and intervention in an adversary proceeding must be sought separately.

■ Several bankruptcy courts within our circuit have held that the adoption of Rules 2018 and 7024 has not affected the vitality of *In re Marin.* *In re Nicolet, Inc.,* 80 B.R. 733 (Bankr.E.D.Pa.1988); *Hanover Industrial Machine Co. v. American Can Co. (In re Hanover Industrial Machine Co.),* 61 B.R. 551 (Bankr.E.D.Pa. 1986); *D.H. Sharrer & Son, Inc. v. Sharrer Investment Trust (In re D.H. Sharrer & Son, Inc.),* 44 B.R. 976 (Bankr.M.D.Pa. 1984). However, from the Advisory Committee Note, it is clear to this court that Congress distinguished, for the purpose of intervention, between cases and adversary proceedings. *See Fuel Oil Supply and Terminaling v. Gulf Oil Corporation,* 762 F.2d 1283 (5th Cir.1985). Consequently, *In re Marin,* with respect to its rejection of the distinction between "case" and "adversary proceeding", has been overruled by the adoption of Bankruptcy Rules 2018 and 7024. Therefore, we hold that 11 U.S.C. § 1109(b) does not create the independent right to intervene in an adversary proceeding.

Moreover, as the Advisory Committee Notes indicate, Rule 2018 specifically implements Section 1109. Rule 7024 does not. Section 1109 provides the foundation for the Equity Committee's attempted intervention under Bankruptcy Rule 7024 and Fed.R.Civ.P. 24. Since section 1109 is inapplicable to Bankruptcy Rule 7024 and Fed.R.Civ.P. 24, the Equity Committee's attempt to intervene under those rules must fail.

The Equity Committee still has the means to obtain the relief which it seeks. Fed.R.Civ.P. 24(a)(2), made applicable to adversary proceedings by Bankruptcy Rule 7024, provides for intervention by right in other circumstances:

Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposi-

tion of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ The first nine counts of the complaint in this case assert theories of fraudulent conveyance and preference. Those counts seek to deprive the Mellon group of their liens in the debtor's assets, thereby maximizing the recovery of all creditors. The last two counts, which aver theories of equitable subordination and breach of the duties of good faith and fair dealing, seek money damages independent of what is owed to creditors. To the extent that the Creditors' Committee may settle this litigation for less than the full amount they have demanded, the funds recovered will inure to the benefit of unsecured creditors, pursuant to the absolute priority rule. *See Norwest Bank Worthington v. Ahlers*, —— U.S. ——, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

Settlement of this case is possible, and to be hoped for, because this will be difficult, expensive, and time-consuming litigation. But if the settlement is less than the amount demanded—a real possibility—equity will be affected, since any hope of a benefit to equity holders hinges upon the successful prosecution of the last two counts. Therefore, we find that the Equity Committee is not adequately represented by the Creditors' Committee with respect to the last two counts. We will allow the Equity Committee to intervene as a party-plaintiff in the last two counts of the complaint only.

We warn the Equity Committee not to duplicate any of the work performed by the Creditors' Committee and not to delay this adversary proceeding. The estate will not pay for such duplication or delay.