### G. C. CAMERON v. S. S. MORRIS.

#### No. 3417.

1. **Descent of Homestead and Exempt Property.**—Zwernemann v. Von Rosenberg, 76 Texas, 522, and Childers v. Henderson, 76 Texas, 664, adhered to, in holding that upon death of insolvent husband the homestead and exempt property of the community are not liable for his debts, provided there survives a constituent member of the family of the deceased.

2. **Liability of Administrator.** — Administration was had upon exempt property upon the death of the widow who had survived her husband about six months. The estate was insolvent. The administrator allowed claims against the deceased husband. These were approved. Claims against the widow were also allowed and approved. No constituent of the family survived the widow. Heirs brought suit against the administrator for conversion of the property, which had been sold under orders of the Probate Court. *Held:*

1. The property was liable for the debts of the widow made after the husband's death.

2. The administration of the assets under the orders of the court protected the administrator, in absence of actual fraud, against heirs of the deceased.

3. General allegations of fraud are insufficient in attacking the legality of an administrator's action in allowing claims and paying them under orders of the court.

APPEAL from Camp. Tried below before Hon. JOHN L. SHEPPARD. The opinion states the case.

*E. A. King,* for appellant, cited Rev. Stats., art. 1653; 47 Texas, 376; 44 Texas, 249; 17 Texas, 187; 21 Texas, 665; 25 Texas, 67; 14 Texas, 446; 18 Texas, 108; 27 Texas, 515; 44 Texas, 253; 16 Texas, 447; 60 Texas, 566; 56 Texas, 540; 19 Texas, 371; 46 Texas, 428; 52 Texas, 165; 50 Texas, 411; 57 Texas, 615; 69 Texas, 319; 56 Texas, 20; 21 Texas, 664.

*M. L. Morris* and *W. P. McLean,* for appellee.—1. On the death of both husband and wife, leaving no heirs of their body or constituents of their family, the homestead and other exempt property which was their community property descends and vests like other property charged with the community debts and the debts of the last survivor, contracted after the death of the one first dying. Const., art. 16, sec. 52; Givens v. Hudson, 64 Texas, 471; Zwernemann v. Von Rosenberg, 76 Texas, 522; Childers v. Henderson, 76 Texas, 664.

2. The orders, decrees, and judgments of the County Court sitting in probate in a matter over which it has jurisdiction can not be attacked in a collateral action, and the District Court has no power to annul its judgments or reverse its proceedings. McGowen v. Zimpelman, 53 Texas, 479; Franks v. Chapman, 60 Texas, 46; Buchanan v. Bilger, 64 Texas, 589; Sabrinos v. Chamberlain, 76 Texas, 624.

COLLARD, JUDGE, *Section A.*—This suit was brought in the District Court of Camp County, on the 11th of March, 1889, by G. C. Cameron and her sister Annie Melton, against S. S. Morris. On the 3d day of December, 1890, James M. Feagan, a brother of plaintiffs, joined them in the suit, when they all filed amended original petition and a supplemental petition "in reply to defendant's original answer." The court below sustained defendant's general demurrer to these petitions, and plaintiffs declining to amend the cause was dismissed and plaintiffs appealed. Defendant's original answer is not found in the record. From the allegations of the amended and supplemental petitions the following statement of the case as therein stated may be made:

A. H. Davenport and Mary W. Davenport were husband and wife, and as such had acquired a homestead in the town of Pittsburg, Texas, and for many years resided on the same, having no other. They had also acquired certain personal property exempt under the law from forced sale to the head of a family. All the property was community of the marriage. August 22, 1883, A. H. Davenport died without issue, his estate being insolvent, he and his surviving wife owning at the time no other property but the homestead and the exempt personalty. After his death there was no administration upon his estate. His surviving wife continued to occupy the homestead and to use the exempt property until her death, which occurred on the 15th day of February, 1884, not quite six months after the death of her husband, she at the time having no other property. Neither of them had heirs

in the ascending or descending line, and plaintiffs, as brothers and sisters of Mrs. Davenport, are her only heirs. There were community debts against A. H. Davenport at the time of his death, which were still unpaid at the death of Mrs. Davenport. After his death she had contracted debts to the amount of $290, which were unpaid at her death.

S. S. Morris, defendant below, administered upon the estate of Mrs. Davenport in Camp County. He inventoried the aforesaid property, and allowed as claims against the estate the community debts existing at the death of A. H. Davenport, as well as the debts contracted by Mrs. Davenport after his death, sold the property, real and personal, under orders of the Probate Court to pay the same and to pay the expenses of administration, and so consumed all the property. His final account and exhibit showing such disposition of the estate was allowed and approved by the Probate Court, and he was regularly discharged as administrator.

Plaintiffs, as the heirs of Mary W. Davenport, deceased, sue the administrator Morris to recover of him the value of the estate so converted by him in payment of the debts existing at the death of A. H. Davenport, admitting that the payment of the $290 on debts contracted by Mrs. Davenport after her husband's death and necessary expenses of administration in that behalf were valid claims against her estate. Plaintiffs allege that Morris wrongfully seized and converted the property to his own use; but other allegations show that this was done in the administration, as before stated, and by virtue thereof.

The supplemental petition contains the following: "Plaintiffs, further replying to defendant's answer, say that the defendant knowingly and with intent to defraud these plaintiffs approved a large amount of fictitious claims and accounts in favor of divers persons—all as shown in the papers and orders of said administration referred to in defendant's answer—said notes, claims, and accounts against A. H. Davenport, deceased, and not against Mary W.—and did, during the course of the administration, represent to the County Court, sitting for probate business in and for this county, and did so swear, before the approval of his said final account referred to in his answer, that the divers claims, notes, and accounts—all as shown by defendant's final exhibit in the papers of said administration of the estate of Mary W. Davenport, numbered on the docket of said court No. 94—were legal claims against the said decedent Mary W. and her property; and that the said court, believing said false representations of defendant, acted on the same, believing them to be true, approved and ordered them paid, believing the same were legal and bona fide claims against said Mary W., when in fact said representations were false and untrue, and defendant knew or might have known that they were false at the time he made them."

It is also alleged that the Probate Court had no power to order payment of claims due by A. H. Davenport. The prayer is that the court declare all the probate orders void except such as appertain to the payment of the debts contracted by Mrs. Davenport after her husband's death, her funeral expenses and expenses of administration, for judgment for the property or its value unlawfully converted.

It is not contended and could not be maintained that the property was not all subject to the payment of Mrs. Davenport's debts at her death. Hudson v. Givins, 64 Texas, 471; Lacy v. Lockett, 82 Texas, 190. The assignments of error require us to decide whether the homestead or exempt personal property became subject to the debts of A. H. Davenport upon the death of Mrs. Davenport.

It is contended by appellee that though the property was protected from such debts during her survivorship, upon her death it immediately became liable, there then being no surviving constituent of the family entitled to the exemptions.

It is our opinion that this question has been decided adversely to appellee by our Supreme Court in two cases, viz., Zwernemann v. Von Rosenberg, and Childers v. Henderson, both reported in volume 76 of the State Reports. In both of these cases the clause of the Constitution (art. 16, sec. 52) which provides that upon the death of the husband or wife, or both, the homestead shall descend and vest in the heirs of deceased as other real property, is discussed and construed; and it is held that the clause referred to was not intended to affect or change other provisions of the Constitution or statutes in relation to debts. The doctrine of these cases is, that if the homestead is protected from the payment of debts because of the survivorship of a constituent member of the family, it is, in insolvent estates, unconditionally and unalterably so protected and can never be taken for any of the debts of the ancestor, except certain named claims. In the case of Zwernemann v. Von Rosenberg, there was no order of court setting aside the homestead, and could not have been. In the case of Childers v. Henderson, supra, the question arose in resisting administration, the Supreme Court holding that no administration could be had, as there was no property subject to administration. This doctrine depends upon express provisions of the statute, which in respect to debts are construed to be in no wise in conflict with the Constitution. Rev. Stats., arts. 2002, 2007, 1817. The same construction gives like protection to exempt personal property. Id., arts. 2002, 2007, 1817, 1993, 1996–1998. As touching the personal property exempt, there can be no question of the constitutionality of article 2002 above referred to, even in casting absolute title upon the beneficiaries, as the clause of the Constitution quoted only refers to the homestead. In so far as that article undertakes to cast the absolute title upon the beneficiaries of the home-

stead, there being other heirs, it is, and has been held to be, in conflict with the Constitution; but not so in regard to debts, the Constitution making no mention of debts. It only regulates descent of the homestead.

The property, real and personal, being community, upon the death of A. H. Davenport without issue passed to his surviving wife as the only heir. She was the only constituent of the family surviving, and as such entitled to the homestead and exempt personalty, and consequently, under the law as decided by our Supreme Court in the foregoing cases, took the title free from debts existing at his death, a title that would descend to her heirs at her death as other estate belonging to her in her separate right. The title was indefeasible in her, and would descend to her heirs subject only to debts for which she and her separate estate would be liable. Upon this question the demurrer should not have been sustained.

There is another phase of the case which probably controlled the court in sustaining the demurrer, and in this the ruling of the court was correct. The orders of the Probate Court in the administration of the estate of Mrs. Davenport were conclusive against her heirs. It was alleged by plaintiffs that Morris, the administrator, allowed fictitious claims against the estate, which were approved by the court, and for which he was allowed credit in his final account; that these claims were approved by the court upon his false representations and affidavit that they were just claims against the estate, when he knew or ought to have known that it was not liable for them. These allegations, when read in connection with all other facts alleged, simply mean that he had allowed debts contracted by A. H. Davenport (community debts), and represented to the court that they were valid claims against the estate of Mrs. Davenport; not that there was any suppression of or misrepresentation of the facts, but only of the law of liability. The act of the court upon such representations was error of law, a mistake of law, and not upon facts fraudulently alleged by the administrator to be true. In such case the orders and decrees of the Probate Court in a suit like this could not be declared void. Though they may not be correct as the law has been construed and declared, they are the legally adjudged decisions and judgments of a court of competent jurisdiction and can not be set aside or reviewed in the District Court in this proceeding. Sabrinos v. Chamberlain, 76 Texas, 624; Buchanan v. Bilger, 64 Texas, 589; Fortson v. Alford, 62 Texas, 576. The orders of the Probate Court, the approval of the administrator's final account, and his discharge, there being no actual fraud, but only a mistake of judgment, are conclusive and would protect the administrator. A payment of the claims upon order of the court would be valid, and the administrator would have been protected in a contest with the heirs in

the Probate Court over the approval of his final account.    Johnson v. Wilcox, 53 Texas, 413.

There being no fraud alleged, but at most only error of law on the part of the administrator and the court, the administrator would not be liable for a conversion of the property at the suit of the heirs.

We conclude that the demurrer was properly sustained, and that the judgment of the lower court should be affirmed.

*Affirmed.*

Adopted January 19, 1892.

MARR, Judge, expresses no opinion as to the question of homestead as discussed above, as its decision is not necessary to a determination of the case, and as there was no order of the Probate Court setting the land apart to Mrs. Davenport as a homestead.